The fifth case for argument is Karen Wells et al. v. Mark Hanneman et al. All right. Ms. Sarf, we'll hear from you first. You may proceed. Ms. Sarf May it please the Court, my name is Kristen Sarf and along with my colleagues Tracy Fussey and Sarah Lathrop, I represent Officer Mark Hanneman and the City of Minneapolis. In the midst of executing a high-risk search warrant for a murder investigation involving body armor-piercing bullets, could a reasonable officer believe that Amir Locke presented a serious threat when he armed himself by grabbing a gun, raised the muzzle from a lowered position as officers approached above, pointed the gun in the direction of Officer Hanneman, and based upon the appellee's brief in this case, apparently The facts that you're reciting seem to be taken in light most favorable to the defendant. We're here on a motion to dismiss. You're asking us to reverse the district court. The videos provide a dim, unclear image of the incident's critical moments, and plaintiffs provide screenshots from the videos that reasonably may be construed to support the finding that Amir was attempting to put the gun down and was raising his other hand immediately before Officer Hanneman fired. Given that we're here on a 12C motion to dismiss, what deference do we owe to the district court's findings? If you conclude that the video blatantly contradicts the conclusions adopted by the court, then none. You are to view the facts in the light depicted by the video. So I want to orient yourself from the – because the video actually plays a very small part in this appeal, surprisingly enough. On the face of the complaint alone, less than two seconds elapsed between – for Officer Hanneman to assess the threat posed by Amir holding the gun. In paragraph 121 of the complaint, the plaintiffs allege that Hanneman shot two seconds after Sergeant Carlson kicked the couch that Amir Locke was on. So we've got a two-second time frame right there. But there's a whole series of events that elapse before we get to the shooting. Paragraph 111 says Locke was startled. He fell off the couch. Paragraph 112 says Locke began to stand. He grabbed the handgun. And at that moment, deadly force is authorized based upon their complaint. We know that from your decisions, Judge Colleton and Judge Grass, in the case of McElry v. City of Cedar Rapids, when the sheer act of drawing or pulling a gun, though not pointing a gun at anyone, was a sufficient threat to allow deadly force – That's not your argument on this appeal, as I understand it. That's the amicus' argument. But your argument is the man pointed the gun in the direction of the officers. District Court failed to acknowledge that, you say, because his assumption is blatantly contradicted by the video. That's the linchpin of your argument on appeal, isn't that right? The linchpin of our argument is that when you consider the menacing actions of Amir and the women, that under the Ching case, no reasonable officer would have had sufficient time to reassess. So we know from the face of the complaint, he's grabbed – But I'm not – correct me if I'm wrong, but your brief argues the man pointed the gun in the direction of the officers. Correct. And you say that's the basis on which, in addition to the other things you mentioned, he qualified in the interview. Well, I guess there's a legal question of whether or not arming oneself in the context of a high-risk search warrant involving body armor-piecing guns would, to a reasonable officer, be deemed to be a threat. And we think the answer to that is clearly yes. The plaintiffs don't contest that if the gun is pointed or raised, that that would be menacing. They do contest whether or not the video shows that. But as a legal matter, whether or not it's pointed or it's raised, that is sufficient to cause deadly force. So going back to your – If you're here on summary judgment, you might have a very strong argument. But we're here on a motion to dismiss, and we're looking at the allegations in the complaint taken as true, unless the video – if the video is encompassed by the pleadings contradicts that. Well, I think the question is – what the district court held is that there are certain dim and unclear parts of the video at critical moments. And I think the legal question is whether or not it's dim and unclear at a material moment. So the video that we've given to you that is the raw video shows – this isn't an Evans v. Crook case, where there's a nighttime video and you can't see the placement of the officer in relation to the person with the gun, and the gun is blocked by the head. This is a case where there's literally a spotlight. There is a flashlight on the gun. The light from the TV and the flashlight illuminates where Officer Hanneman is coming from. The complaint alleges that Officer Hanneman is approaching Amir Locke while he still has a gun. This is a case where Amir Locke is armed for two seconds. And that means that if you look at the non-dim, clear image of the gun raised up at Officer Hanneman, that is a moment where deadly force is authorized. But their only argument was it's just dark. And you can't sustain that. The 064810 in Officer Pearson's video has a spotlight on the gun. That's not dim. Are you talking about the video or the still pictures selectively chosen from the video? Well, both. I watched the video over and over and over. It looked very dim. It looked very inconclusive to me. And that's why we look for the material moments. There certainly are some dim moments. But what we know is at 064810, the gun is spotlighted. You can see Officer Hanneman within mere feet. So the fact that the video becomes dim after that only matters if something material could have happened in that moment that would have allowed Officer Hanneman to reassess. And they don't dispute because they selectively pick two. But what do they pick? They selectively pick 064810. So the supposedly dim – yes, Your Honor. You know, we have a line of cases where we look at still photos taken out of a, you know, media, out of a video. And we have said that when one looks at blatantly contradicted by the video, that then you get into that whole mistaken but reasonable analysis because, you know, you can't hold the officer to making these, like, you know, super quick decisions on that video alone, right? Now, you've never argued here that this could be a mistaken but reasonable case. What you're saying is that this video blatantly contradicts. And, Deb, we have a case anywhere where they've pulled a single still frame out of a video and they used that still frame to say that the otherwise inconclusive video, because like Graz, I looked at – Judge Graz, sorry about that – I looked at it and looked at it and looked at it and I sure didn't see anything that looked like it was blatantly contradicting what Judge Tostred said to me. And so – or what he said, it didn't appear to me that it was blatantly contradicted. The only thing is this is still video and the – or still image. Is there any case where that's been used in our circuit under these circumstances? I can't say that particular fact. But what I can say is if you look at addendum page 20, you can see the gun. And just ask yourself, is that dim and is that unclear, the gun and the illumination of lock? Well, what about the question whether it shows the gun pointed at the office? If you take the facts most favorable to the plaintiff, the appellee, what they allege for the first time – now, we had one motion to dismiss, no argument about what the video says. Second motion to dismiss, no argument about what the video says. Two oral arguments, no argument about what the motion – what the video says. I'm not interested. Now – now – so – sorry, apologies, Your Honor. Well, you said you're relying on this picture. And your point, I thought, was that it's illuminated and one can see clearly that the gun is pointed in the direction of the officers. Yes. Those are separate points, whether it's illuminated and whether you can see the gun pointed clearly in the direction of the officers. Well, we think that the – If the image is ambiguous as to where the gun is pointed, then you would not prevail, right? Agreed. But in the two motions, in the two oral arguments, appellees never said what this image – why this image was unclear. Now, on this brief, what they say is it's unclear because instead of – Your Honor, Judge Colleton, you're Officer Pearson. I'm Amir Locke. This is the couch. Judge Erickson is Officer Hanneman coming around the couch. What we say is the video, the spotlighted Addendum 20, shows the gun pointed upwards. For the first time in this appeal, they say, no, no, it doesn't show it pointing upwards at Officer Hanneman. Instead, what it shows is it's on its side, so you see the top, and it's pointed in the back of the apartment. The problem with that is within the same second, again, 0-6-48-10, they now show a different still frame. Later, time has progressed. The time for Officer Hanneman to assess is reduced. You now can clearly see the side because that's where they're showing – saying he's exerting trigger discipline because you can see the side of the gun. You can see it's – and it's pointed forward where Officer Hanneman has come around the couch. What that means is somewhere in that one second, by their new allegations, Amir Locke has moved the gun in the arc way of where the officer is pleaded to be approaching Amir Locke. What they pled, and what we're bound by, is what they pled and what's blatantly contradicted in the video. But what they pled was that Amir was presented with these terrifying circumstances, these exact words. Wrong lens. Kept his finger off the trigger. Yes. Kept the handgun pointed down. Never raised the handgun in a threatening manner in the direction of any officer or any other person. Now, that's the pleading. So that's what – in a light most favorable to the pleading, that's what they've alleged. And so – and you couple that with what's in the video. You couple that with the fact that the officer never says, gun is present until after shots have been fired. Right? That's when the officer makes that statement. Doesn't make it contemporaneously. Doesn't make it before. Doesn't direct him to drop the gun. Right? And nothing like that. So that's what we've got. And the video is inconclusive in Judge Tostrud's opinion. And if those all turn out to be true, we don't have jurisdiction because there's a question of fact that's material and in dispute. Because we have the officer's version of what he saw, and we have the allegations that are made, and we're at the pleading stage, not the summary judgment stage. Judge Tostrud made a factual finding that Officer Hanneman fired only after seeing the gun in Amir Locke's hand. That was a factual finding of the district court. He also found, as a matter of law, it was a split-second decision. That there was no time to make a warning. That the gun was, in fact, still in Amir Locke's possession. And so we've got him grabbing a murder investigation. So if he's making findings of fact, are we here then on a summary judgment motion? No, a bench trial, apparently. Oh, is there a bench trial? No, but if he had made findings of fact, it would be a trial or a... Factual determination. Yeah. Apologies, I used the wrong term. But he made a factual determination that Officer Hanneman fired after seeing the gun in Amir Locke's hand. He was saying that's what is pleaded. It is. They pled that. They pled... The only facts he's allowed to consider on it. Well, I'm just attempting to go to what Judge Erickson was saying, is that he, that Officer Hanneman only announced this after... Well, that's what the video shows. It does. Right. It does. And we can consider the video if it blatantly contradicts. But if it doesn't blatantly contradict, then it's not before us. We're just stuck with the pleading. The pleading and the video shows that Officer Hanneman instructed, show me your hands before he used force. And that he announced that he had a gun. And there's no dispute that Amir Locke had the gun. I mean, there's no dispute he had the gun. That he grabbed it less than two seconds before the shot. Yeah, and the dispute is, where was the gun pointed? And so you ask yourself, under these circumstances, rapidly evolving, tense, dangerous circumstances, split decision by Judge Tossrud, no time to give a warning because it could have been deadly. Is someone grabbing a gun in that situation alone enough? And that might be all really valuable and important stuff if you're at the summary judgment stage. But we're at the pleading stage here. So we're going to look at a light most favorable to what's pled. And what the video shows, only if it blatantly contradicts. And so the spotlighted gun with the proximity of Officer Hanneman, in this circumstance, it would require you to go against Ching respectfully, Judge Erickson, that you would have one second to reassess whether or not the force was reasonable. No, I'm not aware of any case, this is my telepathically wondering if you're going to ask them, where is the case that says in two seconds or less, under these kinds of confluence of events, an officer's use of force becomes unreasonable or violates clearly established law? I have 20 seconds. But usually we see these cases at summary judgment, not at the motion to dismiss stage. The facts will not be different. The video will be what the video is. But you might make a different argument on summary judgment. Up to now you've argued that you're entitled to judgment because the gun was pointed at the officers. You might argue later what the amicus argues, which is that even if the gun wasn't pointed at the officers, the officer could reasonably perceive a threat. My time is up. May I answer that question? It wasn't really a question. It was just an observation. But I think Judge Erickson had a question. No, you actually got to exactly what I was going to point out, that that's a mistaken but reasonable argument for summary judgment, right, which you could get to at that point. But you can't get to at this point. That's also your mark, I think. Yeah, right. The light most favorable to the plaintiff's case, because even at summary judgment we view the facts in a light most favorable to the person being subject to summary judgment. And you could make the argument that split-second decision, even if mistaken, the mistake was reasonable. That's a defense, right? And that's not present at this stage. Maybe I'm wrong. Maybe there are cases out there that say you can make that argument. But I think timing-wise this is just a premature claim. But whatever. May I make one remark? Just going to Judge Gallatin's comment in Congress with yours. You seem to be drawing a distinction between what the meekest argues and what we argue. And the meekest argues that the sure act of grabbing the gun is sufficient to create a risk. That's part of the complaint. And certainly those are the facts that we outline in all of the motions. It's just not your legal argument on appeal. Your legal argument on appeal is that the video contradicts the district court's assumption of facts because the video shows that the victim or the deceased pointed the gun at the officers. That's your position on appeal in your brief. Yes. In context with the argument. It's different from the amicus argument, which is that you don't need to show the pointing. We agree with that legal argument. Thank you for patience. As far as I can tell so far. Thank you. Mr. Storms, we'll hear from you. Thank you, Your Honor. Is it okay if I return counsels? Please do, Your Honor. Good morning, Your Honors. After listening to arguments in conjunction with the briefing, I think it's clarified that there is no jurisdiction for this appeal. Now, the city has had the opportunity with the appeal to come forward and say it doesn't matter whether or not Mr. Locke ever raised the gun in the direction of the officers. The city didn't make that argument at the liver court. It didn't make it in its briefing. And it didn't come before the court now and tell it that it somehow has made this argument in a way that was less clear. Well, I think we do have jurisdiction, counsel, to decide purely legal issues based on the pleadings. We do, Your Honor. But they have not asked you to decide a purely legal issue. They've come forward and asked this court to decide that Judge Toster's interpretation of the video was somehow blatantly contradicted by the video itself. Well, that just gets us to the point of whether we can consider the video, provided that it's encompassed by the pleadings. Correct, Your Honor. But if you can't consider the video, at no point in time has the city ever argued that there is a legal issue that favors qualified immunity at this stage of the proceedings while accepting that Mr. Locke never pointed the firearm in the direction of the officers. Now, I think that makes sense. You have a motion pending, right, based on jurisdiction? I did make a motion, Your Honor. And the argument is that insofar as the city is asking us to decide whether the gun was pointed at the officer versus not pointed at the officer, that's a factual issue that cannot be reviewed in a qualified immunity case, right? Correct, Your Honor. And what I see that is is the difference between the Cole case, where jurisdiction was argued and found to exist, and the Evans case, where jurisdiction was found not to exist. In Cole, they came forward and said, we accept everything. We accept all the facts in the light most favorable to the plaintiff, on summary judgment in that particular case. And so jurisdiction existed. But the city's never been able to bring itself to just look before the court or any judge or provide any writing and say, we accept all of the facts. You don't have to view the video. We accept all the facts as they exist. I mean, as assumed by the district judge. As assumed by the district judge, and also as you review it here, DeNovo, as we've presented the complaint, they've never accepted our facts in conjunction with the Rule 12 standard, making inferences in our favor and taking the facts alleged as true. And so that's why this is a case that's like Evans, where jurisdiction does not exist, as opposed to a case like Cole, where jurisdiction did exist. So if we agreed with you on that point, then the case would go back to the district court. And where does it stand now? Has there been discovery? No, there was a motion to stay discovery that was granted, Your Honor. So the case was involved. So the case would go back for discovery, and then the city could, if it wished, move for summary judgment after discovery? Correct, Your Honor. You don't think this would preclude – you're not arguing this? Earlier motion would preclude that. Well, I guess I'm not waiving some clever argument. I might come up with a different point, but I'm not aware of a particular holding that would allow me to make that argument. Okay, I understand your position. Go ahead. And I think the case that's really fitting, if we look at the progression of it, is Partridge. You know, Partridge was a case where there was a denial of a motion to dismiss, and then facts were developed, and the factual record became clarified, and ultimately qualified immunity was denied. I think this is not a case like Ching. And the reason for that is Ching is a case where there, one, obviously the panel that reviewed it, which I do recall included Judge Erickson, found that the video evidence was clear. That's not the case here. Judge Tostrud was correct. This is not clear video. So that differentiates it from that case as well. That case is also otherwise different, because that's a case about reassessing threats and not the initial authority to use deadly force. So at this juncture, given the arguments and I think acknowledgement of counsel, and given that an amicus, for example, cannot raise arguments that weren't raised by the other party, we would stand on our motion that no jurisdiction exists over this appeal due to the non-blatantly contradicted video evidence. Do you think we would have jurisdiction to decide whether the video blatantly contradicts the district court's assumed facts? You do, under Scappi-Harris, I think. But if we thought the video did not blatantly contradict, then at that point we would lose jurisdiction to go further. Am I understanding your position? Correct, Your Honor. And because the city has never argued to the contrary, the city has rested their entire argument, as you correctly identified, on whether or not the gun was ever pointed at Mr. Locke. They say there are other, pointed at the officer, Hanman. They point to some other considerations, but they've never let go of that fact. And we know from our case law, like Cole and Partridge, the pointing of a gun is very critical to our analysis with respect to deadly force considerations. So this is a case that requires additional fact-finding. Well. If there are no questions from the panel, I have no further argument. Okay, very well. Thank you. We'll hear a brief rebuttal for 20 seconds or whatever remains on the clock. For Ms. Sarf. You know, your time had expired, hadn't it? Your time had expired. Yeah. I only came up because you said. I'm sorry. We'll submit the case on the arguments that have been made. Sorry to trouble you to come up. And the court will file a decision in due course. So thank you to both counsel. The case is submitted. That concludes the argument session for this morning.